Hosea, J.
Ruling on motion for new trial.
The argument upon this motion is chiefly upon the proposition that the verdict is against the weight of the evidence. It is claimed that negligence on the part of the plaintiff is clearly shown — so clearly indeed that the court should have granted the motion to direct a verdict at the conclusion of the plaintiff’s testimony. A minor objection is based on instructions to the jury in the general charge on the subject -of contributory negligence which are apparently contradictory; but this was an error *490 in the stenographic notes due to a misunderstanding of a word used by the court, which will be corrected in the bill of exceptions.
The plaintiff in this case was a child between fourteen and fifteen years of age at the date of the accident. She approached Westwood avenue coming westwardly upon a bridge leading into it at or just north of Shadwell street. She testified that she saw the car coining south a block and a half away; and as she reached the end of the bridge she again looked and saw the ear three doors above the saloon at the north corner, and saw the motorman “turn two things,” and she thought the car was going to stop because it “kind of shook as if it was going to stop.”
There were several persons waiting at the crossing to take the car, and she hurried across toward them in a diagonal or southwesterly direction for the same purpose, because as she testifies “the car always stopped there.” She did not herself signal to the car because she “thought it was going to stop.” When she reached the middle of the southbound track the car was right upon her and she “did not know what to do” — and practically made no effort to escape injury.
Dr. Tomlinson and his wife, who stood waiting for the car at the crossing and witnessed at short range all that occurred, confirmed her statements, with the additional information that the motorman threw off his brake and turnecl on the power (after having been shut off) while plaintiff was crossing the street and “had almost reached-the track;” and that when the car struck her she was carried about twenty feet, and the car ran about eighty feet after hitting her.' Both the plaintiff and Dr. Tomlinson testified that no gong was sounded by the motorman.
No testimony was offered on the part of the defendant, but a motion to instruct a verdict was made and urged upon the theory that the testimony raised a presumption of contributory negligence on the part of the plaintiff which was not overcome. This motion was overruled, and the question now to be considered is practically the same.
I have given the ease a careful re-consideration, aided by notes of the testimony, including the opening statements of counsel.
*491 Undoubtedly the plaintiff saw the car approaching, and attempted to cross the track ahead of it. It also clearly appears that she planned her action in crossing the street upon the theory that the car would stop because (1) it usually did stop there; (2) others were waiting there in the position of persons expecting to take passage upon it; -(3) the motorman did shut off the power and set his brake as if he intended to stop there. Acting upon these evidences, she started diagonally across, having her back partly turned toward the approaching ear. When she started, across the car was about one hundred and twenty-five feet above the crossing where she expected it to stop.
It is also equally clear inferentially that the motorman saw the child starting diagonally toward the crossing and hurrying across the track toward those already standing at the usual stopping place in the position of persons expecting to take passage upon the car when it should stop. In fact, conditions as he must have seen them should have suggested to him that he was expected by all these people to stop his car at that crossing; and it appears that his first intention was to do so, for it is shown that just above Shadwell street he threw off the current and applied the brake, resulting in a slackening of speed visible to those in waiting and to the girl crossing. The plaintiff also testifies that believing from these acts of the motorman and the visible "shaking of the car that it was going to stop,” she started across; but she says also .that no gong was sounded and that "if it had been sounded she would not have crossed” as it "would have indicated that he was not going to stop and she would not have crossed.” It was also in testimony that the motorman did not cry out or warn the girl when she was near or actually upon the track, and the ear in close proximity.
The reason why the motorman did not stop was given in counsel’s opening statement to'the jury, namely, that the ears had been delayed by a fire and "this car was not making any stops at crossings;” but there is nothing in the testimony to show that this was known to plaintiff or to those in waiting, and a contrary inference is to be drawn from facts affirmatively shown.
*492 Under these circumstances the question of negligence seemed to the court then — and with even greater force now — to be one peculiarly appropriate for the action of the jury under instructions as to three principal rules applicable to all cases of accidents at street railway crossings. These special matters were: first, the general question of contributory negligence in the case of one who crosses a track ahead of an approaching car; second, the question of contributory negligence arising from a situation involving immediate peril; and third, the fact of the minority of the plaintiff as an element in determining the general questions of negligence.
In the charge on these points the court had in mind as bearing on the first of these questions the principles of the Snell case, wherein our Supreme Court emphasizes the equal rights of the public in the use of the streets, and in effect discards any claim of superior legal right on behalf of the street railways based upon the assumed necessities of rapid transit, or to a general right of way as against a private citizen. In respect of crossing tracks ahead of cars, the court says:
“It is not inconsistent with the conclusion that ordinary range of vision would probably have enabled him without turning his head or eyes up the track to see a car in time to avoid it had the ear been running at a safe rate of speed; and we think one so crossing could not be asked to extend his observation beyond that distance within which a ear proceeding at a customary and reasonably safe speed would threaten his safety.” Cincinnati St. Ry. v. Snell, 54 O. S., 197, 209.
Following this is a commentary upon the facts of that case that may be with perhaps equal propriety.said of the facts here in issue, namely:
‘ ‘ Taking the effect of the evidence as a whole, one thing which is tolerably clear is that if the car had been running at a reason-iffy safe speed, and proper warning had been given, Snell would not have been injured. The evidence pro and con was to be weighed, and the tribunal for that purpose was the jury and not the court upon the motion.”
It may fairly be said to be apparent in the ease at bar that if the motorman had allowed the slackening of speed, which he in *493 timated when approaching Shadwell street, to continue — in other words, if he had not on approaching the crossing released the brake and thrown on the current — the plaintiff would not have been injured. She would have had ample time to get across to a place of safety as she intended.
The court also had in mind in giving the charge the utterance of the circuit court as a gloss or interpretation of the principle of the Snell case, as follows: ,
“It is not negligence for a person to attempt to cross a street ear track ahead of an approaching electric car when the ear is so far away that by the exercise of reasonable care it might be stopped before reaching the place of crossing.” Toledo St. Ry. Co. v. Westenhuber, 22 C. C., 67; affirmed by Supreme Court in 65 Ohio St., 567.
The question thus presented relates generally to the act of ■ attempting to cross the street or track, but it also appeared that when the ear was in dangerous proximity, the child, being upon the track, appeared confused and made no effort to escape. It seemed proper to charge with reference to circumstances of immediate peril that contributory negligence can not be predicated upon the fact that one in the immediate presence of threatened danger fails to exercise ordinary care to avoid injury. This is a principle recognized everywhere, and is particularly set forth in the Kasson case, 49 Ohio St., 239.
The third and last important question — involving a principle modifying the application of the other two — has relation to the youth of the plaintiff. On this point the charge was based on the Corrigan case in 46 Ohio St., 283, and the Mackey case, 53 Ohio St., 370 (383), the principle being that a child is presumed to possess only such discretion as is common to children, and is to be held only to the exercise of such care as is reasonably to be expected of children of like age and capacity. The question at issue, as it seems to me, in such cases involves not alone the immediate conditions of the act of a plaintiff, but surrounding circumstances influencing the motive for the act and touching the question of its propriety, and for these reasons to be one necessary to be submitted to a jury. However the act *494 might be viewed had the injured person been an adult, the element of youth presents a modifying factor that should be left to a jury under the Ohio rule of ordinary care. Indeed, in formulating the rule applicable to children, the Supreme Court, in the Corrigan case, recognizes the confused state of the law resulting from the application of conflicting rules in different jurisdictions (page 288)', and adopts a conservative doctrine between the extremes which necessarily involve a consideration of circumstances in each case. And this, as it seems to me, is necessarily a matter for the jury, and it is so declared in Railway v. Mackey, 53 Ohio St., 370. This is emphasized by the corresponding rule that as the quantum of care required of a child is diminished, that of a defendant to avoid injuries to children is increased (see Snell case, p. 291). The doctrine is thus made to rest entirely upon a consideration of circumstances and a balancing of.modified obligations, so that under the Ohio law-there would seem to be no room for a view that under any circumstances the court would be justified in determining it in imputing negligence to a child as matter of law.
Outcall c§ Hickenlooper, for the motion.
Iloffman, Bode & LeBlond and B. H. Stiles, contra.
It will be further apparent that on a question of this nature where our state rule is so clearly and. diseriminatively established, decisions from other courts are of little value unless shown to be based upon the same rule. In Massachusetts, for example, the rule permits the court rather than the jury to determine the responsibility as a matter of law. See Shearman & Redfield on Negligence, paragraph 73a.
Upon the whole case I am satisfied that the questions presented were properly left to the jury, and I do not think I am justified in disturbing their verdict for the reasons presented in this motion for a new trial, nor for any others that have appeared upon review of the trial incidents.
Motion denied.